RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE _____

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF TAIRA LYNN MARINE | CIVIL ACTION 01-1420 |
| VERSUS | CHIEF JUDGE HAIK |
| | MAGISTRATE JUDGE HILL |

## JUDGMENT

Before the Court are a Motion for Summary Judgment by Zurich Insurance Company, XL Specialty Insurance Company and National Union Insurance Company of Louisiana against WQIS (Doc. #751) and a Motion for Summary Judgment by WQIS seeking to dismiss the claims of Zurich, XL, and National Union (Doc. #750). The Motions raise the same issues. After full consideration of the issues presented, the Court finds as follows:

On July 19, 2001, a tank barge owned by Kirby Inland Marine, Inc. ("Kirby") pushing a towboat owned by Taira Lynn Marine ("Taira Lynn") collided with the Louisa Swing Bridge at Cypremort Point, Louisiana. The collision caused the discharge of 3,000,000 pounds of propane propylene into the environment. The situation resulted in the evacuation of a five mile radius of the bridge and declarations of states of emergency from both St. Mary and Iberia Parishes. Following the incident, numerous law suits/claims were filed.

Taira Lynn had various insurance policies in place at the time of the incident–a "Primary Hull, Machinery, etc. Protection & Indemnity Policy" ("P&I Policy") issued by Zurich Insurance Company and XL Specialty Insurance Company; a pollution policy issued by Water Quality

Insurance Syndicate ("WQIS"); and an excess policy issued by National Union Insurance Company of Louisiana ("National Union"). The issues raised in the instant motions deal exclusively with insurance disputes.

XL and Zurich claim they exhausted their policy limits through defense costs and settlement payments, but argue the claims alleged included some which fell within the coverage offered by WQIS. These insurers further contend that WQIS wrongfully denied coverage and reimbursement of such costs. They seek reimbursement of $324,847.30 in defense costs through subrogation of Taira Lynn's rights. Further, the inaction by WQIS allegedly resulted in National Union, the excess carrier, undertaking the payment of defense costs and settlement expenses on behalf of Taira Lynn Marine. National Union seeks reimbursement of all defense costs and expense payments in the amount of $1,612,097.77.

## WQIS COVERAGE

WQIS argues that the incident at the center of this case was neither an OPA, nor a CERCLA event. That is, it does not fall within the coverage offered under Article A of the WQIS Policy for liability under the Oil Pollution Act ("OPA") or Article B, liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), which offer $5 million and $10 million in coverage, respectively. As the policy was not triggered under either of those Articles, WQIS claims its policy limits were exhausted through the payment of settlement and defense costs which totaled over $1 million.

This Court agrees that the discharge of the propane propylene compound does not qualify as an OPA event. However, the Court finds it does fall under CERCLA as a hazardous substance, triggering coverage under Article B of the WQIS Policy. It is clear from the record

that the propane propylene that was released during the incident not only entered the air, but also covered the water, land, and all items in the surrounding area. Article B of the WQIS Policy provides as follows:

> This Article provides coverage for specified liabilities arising from the release or threatened release of a hazardous substance, as follows:
>
> ...
>
> (3) Liability to a third party arising from the sudden, accidental and unintentional discharge, spillage, leakage, emission or release of a hazardous substance into or upon the navigable waters of the United States or adjoining shorelines for damages, as follows:
>
>     (a) injury to, or economic losses resulting from, the destruction of or damage to real property, personal property or natural resources;
>
>     (b) loss of subsistence use of natural resources that have been injured, destroyed, or lost; or
>
>     ( c) liability to a third party for loss, damage, cost, liability, or expense which would have been recoverable by such a third party under Article B of Part I had the third party been an Assured under this policy; and
>
> (4) Costs and expenses incurred by the Assured for actions taken with the prior approval of WQIS to avoid or mitigate the liabilities insured against under this Article B or Part I.

A "hazardous substance" under CERCLA includes:

> (A) any substance designated pursuant to **section 1321(b)(2)(A) of Title 33**, (B) any element, compound, mixture, solution, or substance designated pursuant to **section 9602** of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [**42 U.S.C.A. § 6921**] (but not including any waste the regulation of which under the Solid Waste Disposal Act [**42 U.S.C.A. § 6901 et seq.**] has been suspended by Act of Congress), (D) any toxic pollutant listed under **section 1317(a) of Title 33**, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act [**42 U.S.C.A. § 7412**], and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to **section 2606 of Title 15**. The term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F)

of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas). (42 U.S.C. section 9601(14))

Title 42 section 9602 states, "The Administrator shall promulgate and revise as may be appropriate, regulations designating as hazardous substances, in addition to those referred to in section 9601(14) of this title, such elements, compounds, mixtures, solutions, and substances which, when released into the environment, may present substantial danger to the public health or welfare or the environment...The Administrator may determine that one single quantity shall be the reportable quantity for any hazardous substance, regardless of the medium into which the hazardous substance is released."

The amendments to the Clean Air Act enacted in 1990 included a regulatory programs for the prevention of the release of hazardous substances. Included in the listing of toxic and flammable substances under 40 C.F.R. section 68.130 are both propane and propylene. They are both listed at a threshold quantity of 10,000 pounds. In the instant case, over 3,000,000 pounds of propane propylene, was released into the environment. This number is far beyond the 10,000 pound threshold set forth by the Environmental Protection Agency (EPA). To find that propane propylene, which contains both propane and propylene, is not a hazardous substance simply because propane and propylene are listed individually, and not as a compound, by the EPA would be nonsensical. That would be to find that a whole is not made up of its individual parts, which this Court is not willing to do. Additionally, to find that the release of 3,000,000 pounds of substances listed as toxic and flammable do not qualify as "hazardous" also defies reason. 3,000,000 pounds of propane propylene released into the environment and affecting land, air, and

water certainly presents a substantial danger to the health and welfare of the environment. Further, the Court finds the exceptions for petroleum, natural gas, natural gas liquids, liquefied natural gas, or synthetic gas do not apply. Although WQIS strongly argues the case for finding the propane propylene at issues falls outside of coverage, the Court disagrees. The substance released during the collision was not an oil and certainly does not qualify as a natural gas. Additionally, propane propylene is not a synthetic gas that is usable for fuel. It is, quite clearly, a "hazardous substance" as anticipated by CERCLA.

Additionally, WQIS has admitted in various documents throughout the record that the incident involved the release of a hazardous substance and has paid in settlement under Article B of the policy, CERCLA coverage. For example, WQIS stated in Record Document 129, "Because the WQIS policy provides coverage to Taira Lynn for specified liabilities arising from the release of a hazardous substance, including liability to a third party such as Kirby for payment of costs and expenses incurred by the third party for removal, response or remedial action under Section 107(a)(1) of CERCLA, WQIS subsequently negotiated with Kirby to settle its pollution/emergency response costs claimed in Taira Lynn's limitation action". The Court can not and will not simply disregard those statements or admissions, as has been requested, because a different position is now more favorable to WQIS. In any event, had WQIS not admitted CERLCA coverage, the same finding would have been made. The admission is merely further evidence of CERCLA application. It is hereby held that coverage under Article B of the WQIS policy is applicable.

## **DEFENSE COSTS**

The WQIS policy provides indemnity to its Assured for "such amounts as the Assured shall have become liable to pay and shall have paid in its capacity as owner and/or operator of the vessel..." and for reimbursement of "certain other costs and expenses as described below, which the Assured shall have incurred in its capacity as owner and/or operator of the Vessel..." Defense costs are covered if incurred by the Assured with the "prior consent of WQIS for investigation of, or defense against, any liabilities" covered under Articles A and B of the Policy. The Court clarifies that the policy does not state "prior *written* consent" as argued by WQIS.

WQIS argues that it does not owe any more money under the policy for a number of reasons. First, it claims it did not consent to the retention of Liskow and Lewis to represent Taira Lynn. Whether WQIS consented to such representation in correspondence or not has no bearing. The fact of the matter is that WQIS denied coverage to its insured, Taira Lynn, and, once it did so, Taira Lynn was within its right to secure defense counsel without the blessing of WQIS. If it ultimately turns out that coverage is due under the WQIS policy, as is the case here, then the insurer is bound by the terms of its policy. However, once WQIS denied coverage and the right to secure counsel arose in favor of Taira Lynn, the "prior consent" language of the policy became inoperable. Consequently, Taira Lynn was not required to seek prior consent in order to collect what it is due under the insurance policy.

As to the reimbursement, WQIS claims Taira Lynn did not incur any costs and expenses as XL and Zurich paid directly and no money came out of Taira Lynn's pocket. As such, WQIS does not owe reimbursement because the policy does not provide for reimbursement to another insurance company, but to its Assured. Additionally, no bills were presented to WQIS for

reimbursement prior to the filing of the instant motions. The Court agrees with WQIS that it does not owe reimbursement to other insurance companies if their policies were properly in play and they made payment. However, to any extent the WQIS policy should have been liable rather than the XL, Zurich or National Union policies, reimbursement would be owed because the costs paid were those incurred by Taira Lynn for its defense and owed by WQIS. As to the timing of reimbursement, the Court finds that, as the WQIS policy does not specifically provide for when the incurred costs/expenses should be paid, then payment is due immediately upon the Assured incurring them. The Court notes for the record, however, that the policy does not state that reimbursement is due for expenses "as incurred" as argued by XL, Zurich, and National Union. WQIS denied coverage to Taira Lynn and, consequently, was not provided with invoices for defense costs. WQIS can not now fall back on the presentation of invoices, or lack thereof, as an excuse to avoid liability for any duty owed.

## **WHAT IS OWED?**

After full consideration of the XL and Zurich policy and the WQIS policy, and taking into account the entirety of this situation, including the position changes and legal game playing that has taken place throughout the course of this case, it is hereby held that:

XL and Zurich and WQIS all owed coverage to the insured, Taira Lynn. The difference being that, under the WQIS policy, there was no duty to defend; instead, WQIS owed reimbursement to Taira Lynn for the costs of defense. While the XL and Zurich policy was in play, it owed Taira Lynn a defense and coverage of the costs involved. However, when the limits of that policy were reached, the costs of that defense should have fallen to Taira Lynn and were subject to reimbursement by WQIS. They were, instead, assumed by National Union, as the excess carrier, because WQIS denied coverage. It has been established that WQIS wrongfully

did so and that coverage was due under Article B of the policy. Consequently, WQIS owes no money through reimbursement or any other theory to XL and Zurich. The Zurich and XL policy was in effect and owed Taira Lynn up to its limits. It is further held that all damages arising out of the one accident will be counted together for the purpose of determining when the limits were reached as that is provided for in the XL/Zurich policy and the Court finds it is a fair application in this specific case.

However, WQIS does owe National Union the amount it paid for Taira Lynn as it is a true excess policy which was not yet in effect because the WQIS policy, a primary policy, owed coverage. As the limits under Article B of the WQIS policy would not have been reached through the amounts paid as presented to the Court, the National Union excess policy was never triggered. The amounts paid by National Union would have fallen to Taira Lynn, and been subject to reimbursement by WQIS, had National Union not stepped in as the excess carrier. Therefore, WQIS, the primary insurer whose policy provided coverage before any excess policy, owes National Union $1,612,097.77.

Based on the foregoing, it is hereby **ORDERED, ADJUDGED, and DECREED** that the Motion for Summary Judgment by XL, Zurich, and National Union (Doc. #751) is **GRANTED in part and DENIED in part**, and the Motion for Summary Judgment by WQIS (Doc. #750) is **DENIED**. It is **FURTHER ORDERED** that WQIS shall pay the amount of **$1,612,097.77** to National Union Insurance Company of Louisiana for coverage it owed to its insured as the primary policy which was paid by National Union as the excess carrier.

**THUS DONE** and **SIGNED** on this \_\_\_2nd\_\_\_ day of \_\_\_July\_\_\_, 2009.

_____
RICHARD T. HAIK, SR., JUDGE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

COPY SENT
DATE 7/6/09
BY
TO
bB